LAUREN DETTMAN-BRUNSFELD, Special Adm'r of the Estate of Pamela Kolman, Deceased, Plaintiff-Appellant, v. MARTIN J. SZANTO, Defendant-Appellee.

First District (6th Division)   No. 1—93—2242

Opinion filed October 28, 1994.

Nicholas J. Motherway, of Motherway & Glenn, P.C., of Chicago, for appellant.

Swanson, Martin & Bell, of Chicago (Joseph P. Switzer and Kevin V. Boyle, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

This case involves a wrongful death action brought by plaintiff, Lauren Dettman-Brunsfeld, special administrator of the estate of Pamela Kolman, the decedent, against defendant Martin J. Szanto, M.D., in connection with defendant's failure to diagnose that the decedent had lung cancer when she consulted him at his office. The cause was dismissed by the trial court upon its granting of defendant's section 2—619 motion to dismiss with prejudice. (Ill. Rev. Stat. 1991, ch. 110, par. 2—619.) The pleadings raise the issue of whether plaintiff's cause of action is barred by a previous judgment. The pertinent facts are as follows.

In May 1988, the decedent consulted defendant at his office. At that time, defendant ordered the decedent to undergo a chest X ray. Prior to July 5, 1989, the decedent became aware that she had lung cancer. On July 5, 1989, the decedent brought an action to recover damages for the injuries she sustained as a result of defendant's allegedly negligent medical treatment, that is, his failure to diagnose her cancer.

The case proceeded to trial, and on November 15, 1990, the jury returned a verdict in favor of the decedent in the amount of $1,250,000. It then reduced the award by 40%, the percentage of negligence it found attributable solely to the decedent; it thereby assessed the decedent's recoverable damages in the sum of $750,000. The verdict included damages for the following elements: aggravation of a preexisting ailment or condition; disability and disfigurement; past and future pain and suffering; and past and future lost earnings. The jury did not and could not include damages for the loss of the decedent's society. The trial court entered judgment on the verdict in the net amount of $750,000.

On November 30, 1990, defendant satisfied the $750,000 judgment that the decedent held against him. The decedent did not execute any quittance documents or releases purporting to extinguish her rights or the rights of her heirs or estate.

On May 14, 1991, the decedent died, allegedly due to the injuries she sustained as a result of defendant's negligent medical treatment. She left three survivors, her mother and her two sisters, one of whom is plaintiff. On December 28, 1992, acting as special administrator of the decedent's estate, plaintiff filed the present wrongful death action to recover loss of society damages resulting from the decedent's death. The claim was filed within the two-year statute of limitations.

On March 18, 1993, defendant filed a section 2—619 motion to dismiss with prejudice wherein he pointed out that in her wrongful death action, plaintiff did not attempt to make any additional allegations of negligence which would be unique to the present cause of action, but rather relied entirely on the jury's verdict. After a hearing on May 24, 1993, the trial court granted defendant's motion and dismissed plaintiff's action. The trial court held in pertinent part:

> "While this is a case of first impression to an extent, I think that the language of the statute is so clear that it really doesn't leave much room for doubt. The language of the statute unequivocally requires that the [p]laintiff have a cause of action during her lifetime. Now what is the nature of the cause of action for malpractice. That is what she had. That is what she took to the jury. The jury agreed with her, and the jury awarded her a net sum of $750,000, which was paid apparently the very day that the jury rendered its verdict. The cause of action is a cause of action for malpractice, and that cause of action no longer existed because it had to go to final judgment, and the judgment had been paid, and the matter concluded. Now, the [p]laintiff makes the argument, well, there was a cause of action for loss of society which the [p]laintiff—the [d]ecedent could not have brought in her lifetime. It is perfectly true that the [p]laintiff could not have brought a cause of action [f]or loss of society in her lifetime and neither could anyone else, but a loss of society is not a cause of action. It is an element of damage, and it seems to me that we should not split up in fragments the cause of action. We have to remember that the cause of action is a cause of action for medical malpractice. That is what went to trial, and that is what was decided, and while it is true that if the [p]laintiff had died, and that there—and that the cause of action was still open under the statue of limitations, the Statute of Repose, there would have been perhaps an additional recovery by the heirs for loss of society. That is not

what in fact happened, and it seems to me the cause of action for loss of society—that the claim or element of damage, of loss of society was simply gone. I am going to grant your motion."

Plaintiff appeals.

On appeal, plaintiff contends that the trial court erred when it granted defendant's motion to dismiss with prejudice her cause of action, ruling that the decedent's recovery of a judgment for her personal injuries during her lifetime extinguished plaintiff's wrongful death cause of action for loss of society damages.

Plaintiff argues that the court erroneously failed to consider that under section 1 of the Wrongful Death Act (Ill. Rev. Stat. 1991, ch. 70, par. 1), an action to recover loss of society damages on behalf of the survivors is independent of the decedent's action to recover for her own personal injuries. She therefore asserts that because the actions are independent, the survivors' cause of action cannot merge into a judgment entered in the decedent's personal injury action. Plaintiff also argues that under this reasoning, the statute itself cannot bar a cause of action which has yet to come into existence. Moreover, plaintiff claims that Illinois law establishes that a survivor's cause of action for loss of the decedent's society under the Wrongful Death Act is independent of a decedent's cause of action for the personal injuries which caused her death, further supporting her claim that the survivors' cause of action does not merge into the decedent's recovery. We agree.

■ Section 1 of the Wrongful Death Act provides:

"Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony." Ill. Rev. Stat. 1991, ch. 70, par. 1.

This court has recently filed an opinion supporting our position in the present case. (*Varelis v. Northwestern Memorial Hospital* (1994), 266 Ill. App. 3d 578.) In *Varelis*, the decedent's widow and the administrator of his estate filed a wrongful death action against defendant Northwestern Memorial Hospital after the decedent and his widow had already recovered a $2,821,934 judgment against defendant for his personal injuries and her loss of consortium (for the period that the jury found the decedent likely to live) arising from the

same medical negligence which is alleged to have caused the death of the decedent. On cross-motions for summary judgment, the trial court entered judgment in favor of defendant, finding that plaintiffs' wrongful death action could not be properly maintained after the entry of judgment and satisfaction of that judgment in the decedent's personal injury action. On appeal, the defendant argued in support of the summary judgment order in its favor that the language of the Wrongful Death Act barred plaintiffs' cause of action because there was a recovery in a personal injury action for the same negligence alleged in the wrongful death action. Defendant further asserted that in accordance with the above statute, a release or accord and satisfaction by the injured party during his lifetime precluded a wrongful death action predicated on the same alleged negligence and injury. This court found, however, that such reasoning incorrectly equated a personal injury action with a wrongful death action. Consequently, it reversed the trial court's order granting summary judgment in favor of the defendant and remanded the cause for further proceedings.

■ Specifically, the *Varelis* court found that a personal injury action is more appropriately equated with a survival action, which is brought after the death of an injured person by a representative of his estate in an effort to adjudicate those statutory and/or common law actions which had already accrued to the decedent prior to his death. (*Varelis v. Northwestern Memorial Hospital* (1994), 266 Ill. App. 3d at 581.) A survival action therefore allows for recovery of damages for injury sustained by the decedent up to the time of death, as opposed to a wrongful death action, which allows the decedent's next of kin to recover damages for their loss based on the wrongful actions of another which were committed against the decedent. (*Varelis*, 266 Ill. App. 3d at 581.) The damages for a wrongful death action do not accrue until after the death of the injured person and address the injury suffered by the next of kin due to the loss of the decedent. Unlike the damages in a survival action, they neither accrue during the decedent's lifetime nor address the injuries personally suffered by the decedent prior to death. (*Varelis*, 266 Ill. App. 3d at 582.) "Hence, the precipitating 'injury' for plaintiffs in a wrongful death action, unlike the injury in a personal injury action, is death." *Varelis*, 266 Ill. App. 3d at 582.

■ With regard to the defendant's argument that the plaintiffs' wrongful death action merged into the personal injury action, this court held that the authority cited by the defendant in no way suggested that a judgment entered in a personal injury action for damages prior to death in any way merged or abated a subsequent wrongful death action by a decedent's next of kin, where the latter

cause of action could not be brought until a death had occurred. *Varelis*, 266 Ill. App. 3d at 583-84.

■ Finally, in regard to the defendant's assertion that to allow the plaintiffs to maintain a wrongful death action would be fundamentally unfair because it had already paid the decedent's widow monies to compensate her for loss of consortium and services, the *Varelis* court held that the potential for double liability could be eliminated by the defendant through its assertion of the affirmative defense of collateral estoppel. (*Varelis*, 266 Ill. App. 3d at 584.) Such a defense could be asserted if plaintiffs sought damages already litigated in the personal injury action. *Varelis*, 266 Ill. App. 3d at 584.

■ In the present case, the trial court found that there was one cause of action, medical malpractice, and that when that action went to judgment plaintiff's present claim "was simply gone." Applying *Varelis* to the facts here, the decedent's recovery for her personal injuries did not bar plaintiff's cause of action for loss of society. Where a wrongful death action is a separate and distinct cause of action from a personal injury action, a personal injury action in no way abates or merges with a subsequent wrongful death action, and the potential for double recovery can be prevented.

Defendant has filed a supplemental brief urging that *Varelis* is factually distinguishable from the present case. We do not agree. Defendant claims that because the decedent in *Varelis* filed a post-trial motion for a new trial wherein he sought to set aside the verdict in his personal injury action prior to his death, alleging that the damages awarded were inadequate, his personal injury action was unresolved and still viable at the time of his death, since he died while his motion was pending with no payment having been made to him during his lifetime. Defendant asserts that because the decedent in *Varelis* died possessed of a valid cause of action for his own personal injuries, the statutory requirements imposed by the Wrongful Death Act were satisfied such that the subsequently filed wrongful death action could be maintained. We find, however, that the distinction between whether a judgment has actually been satisfied or whether the suit has simply been reduced to judgment is a technicality having no bearing on whether or not the decedent possesses a viable cause of action for his injuries at the time of his death.

Defendant also asserts that the *Varelis* court overlooked the fact that a condition precedent to an action under the Act is the existence of the decedent's right of action to recover for his own personal injuries, regardless of whether the decedent's right of action was barred by a release, accord and satisfaction, estoppel by verdict or

the exclusivity provisions of a worker's compensation statute. We find, however, that there is a distinction between whether a decedent, at the time of his death, did not have a viable cause of action for his personal injuries because such action was barred by a release, estoppel by verdict or the exclusivity provisions of a worker's compensation statute and whether such action was no longer viable by virtue of the fact that it had been reduced to judgment and satisfied during the decedent's lifetime. In the first instance, the decedent was not entitled to have his injuries redressed, whereas in the latter instance, he was so entitled and judgment in his favor was satisfied accordingly.

We are mindful that another district of this court has considered this same issue and has reached an opposite result. (*Kessinger v. Grefco, Inc.* (1993), 251 Ill. App. 3d 980, 623 N.E.2d 946.) We believe, however, that the *Varelis* analysis is correct, and we decline to follow *Kessinger.*

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed, and the cause is remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

GIANNIS, J., concurs.

PRESIDING JUSTICE EGAN, specially concurring:

I agree with the majority opinion in every respect, but I wish to state why I disagree with *Kessinger v. Grefco, Inc.* (1993), 251 Ill. App. 3d 980, 623 N.E.2d 946, and to discuss another case so heavily relied on by the defendant, *Mooney v. City of Chicago* (1909), 239 Ill. 414, 88 N.E. 194.

I begin with recognition that *Kessinger* is a thorough and scholarly discussion of an array of imposing precedent which arguably supports the defendant's position in this case. But I believe that the genesis of all the precedent after 1909 is *Mooney v. City of Chicago*, which is also cited in *Kessinger*. I share the view of the plaintiff that *Mooney* no longer represents the view of the supreme court of this State.

In *Mooney*, the decedent executed a release after he was injured and died shortly afterward. His administrator filed an action for wrongful death, and the defendant pleaded the release executed by the decedent. The jury returned a verdict for the estate. The principal issue on appeal was the failure to instruct the jury on the effect of the release. The appellate court affirmed, holding that "the cause of

action released or satisfied by the instrument was an entirely different one from the [wrongful death action]." (*Mooney*, 239 Ill. at 422.) The supreme court reversed the appellate court and held that the appellate court's determination that the cause of action of the decedent was different from the wrongful death action was wrong:

"There was but one cause of action and there could be but one recovery or satisfaction. *** There being but one cause of action there can be but one recovery, and if [the decedent] had released the cause of action the statute does not confer upon his administrator any right to sue." (*Mooney*, 239 Ill. at 423.)

It is my judgment that the statement of *Mooney* that there is only one cause of action no longer represents the view of the Illinois Supreme Court. In support of its holding that there was only one cause of action, the *Mooney* court cited *Holton v. Daly* (1882), 106 Ill. 131. But *Holton* was expressly overruled by the supreme court in *Murphy v. Martin Oil Co.* (1974), 56 Ill. 2d 423, 431, 308 N.E.2d 583. In *Murphy*, the supreme court held that the heirs of a decedent could maintain a survival action *and* a wrongful death action.

In *Herget National Bank v. Berardi* (1976), 64 Ill. 2d 467, 356 N.E.2d 529, the decedent and his wife were killed when an airplane piloted by the decedent crashed. The administrator of the estate of the wife brought an action against the decedent's estate under the Wrongful Death Act on behalf of the wife's surviving minor children. The trial court allowed the defendant's motion to dismiss the complaint because the wife's claim would have been barred under the married woman's act (Ill. Rev. Stat. 1973, ch. 68, par. 1), which bars wives or husbands from suing their spouses for a tort committed during coverture. The defendant argued that because the wife could not have maintained an action, her heirs or representative were barred from maintaining an action under the Wrongful Death Act. The supreme court disagreed.

The *Kessinger* court deprecated the holding in *Herget*; it said that the supreme court in *Herget* "appeared to resurrect the notion a wrongful death claim is separate from a survival action" and held that "the holding there should be limited to its unusual facts, *i.e.*, the contemporaneous death of a husband and wife with the claim being asserted on behalf of the surviving children." (*Kessinger*, 251 Ill. App. 3d at 985.) I do not read *Herget* to be a resurrection of the notion that a wrongful death claim is separate from a survival action. The supreme court made its position clear on that point two years before in *Murphy* (56 Ill. 2d at 431 (survival statute and wrongful death statute are "conceptually separable and different")).

I feel confident that the supreme court will adhere to the views

expressed in *Murphy* and *Herget*, which were both written by the same justice. There were no dissents in either case.

For these reasons, I repeat that I agree with the plaintiff that *Mooney* no longer represents the view of the Illinois Supreme Court, and I agree with *Varelis*, relied upon by the majority, rather than with *Kessinger*.