CONCETTA F. CRUZ, Adm'r of the Estate of James Cruz, Deceased, Plaintiff-Appellant, v. ILLINOIS MASONIC MEDICAL CENTER *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 1—94—0617

Opinion filed March 21, 1995.

Susan E. Loggans & Associates, P.C., of Chicago (Susan E. Loggans, of counsel), for appellant.

Sachnoff & Weaver, Ltd. (Brian D. Roche and Joel M. Neuman, of counsel), and Joan M. Lebow, of Illinois Masonic Medical Center, both of Chicago, for appellees.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

On July 23, 1990, James Cruz was injured in an automobile accident and taken to defendant Illinois Masonic Medical Center where,

after being injected with Nacuron, he went into full cardiac and respiratory arrest and had to be revived by a defibrillator. Mr. Cruz regained consciousness about nine days later but remained in a "vegetable state" until his death on April 23, 1993.

Before his death, however, on February 21, 1991, plaintiff, individually and as guardian of her husband's estate, filed an action (Cruz I) against defendants, which included claims based on negligence, *res ipsa loquitur*, and loss of her consortium. On April 29, 1992, the parties settled the case for $2.5 million,[1] plaintiff agreeing both individually and as guardian "not to further prosecute or again sue" defendants for damages arising out of the incidents complained of in the Cruz I litigation.

On May 20, 1992, the parties stipulated to a dismissal of the case with prejudice, and the trial court entered an order to that effect. Thereafter, pursuant to the provisions of Circuit Court of Cook County Rule 6.4, the probate court approved the settlement and ordered that from the net amount thereof a "permanent budget for [their] care and support" be created in order to provide that the Cruz children[2] and plaintiff as an individual receive monthly payments of $2,750 and $2,000, respectively.

On May 10, 1993, plaintiff, as administrator of her deceased husband's estate, filed a wrongful death action (Cruz II) against defendants. Defendants moved to dismiss plaintiff's complaint (735 ILCS 5/2—619 (West 1992)), arguing that because the decedent had already settled his cause of action against them while he was still living, plaintiff's wrongful death action was barred as a matter of law pursuant to section 1 of the Wrongful Death Act (the Act)[3] (740 ILCS 180/1 (West 1992)). The trial judge agreed with defendants, and on January 21, 1994, he dismissed plaintiff's second amended complaint with prejudice. This appeal followed.

Defendants' motion to dismiss admits all facts well pleaded in plaintiff's complaint; we thus apply a *de novo* standard in reviewing the issues raised on appeal; in any event, the parties raise only ques-

---

[1]Although unclear in the record, at oral argument on appeal, plaintiff explained that the settlement was comprised of 80% for Mr. Cruz and 20% for loss of her consortium.

[2]At the time of the settlement plaintiff and Mr. Cruz had two children, a son age 9, and a daughter age 12.

[3]Plaintiff's complaint in Cruz II, in addition to containing a wrongful death count, included survival and *res ipsa loquitur* counts. Plaintiff's second amended complaint, in response to defendant's motion to dismiss, omitted the survival count. The *res ipsa loquitur* count was not addressed on appeal.

tions of law. *Toombs v. City of Champaign* (1993), 245 Ill. App. 3d 580, 583, 615 N.E.2d 50, 51 (*de novo* standard applied on review of a motion to dismiss ruling); *Ranquist v. Stackler* (1977), 55 Ill. App. 3d 545, 550, 370 N.E.2d 1198, 1202 (statutory construction raises question of law requiring application of *de novo* standard of review); *International Insurance Co. v. Sargent & Lundy* (1993), 242 Ill. App. 3d 614, 622-23, 609 N.E.2d 842, 848 (whether language of release is clear and explicit is a matter of law).

We first address the issue of whether a decedent's settlement, prior to his death, of his personal action against a negligent defendant forecloses, pursuant to section 1 of the Act (740 ILCS 180/1 (West 1992)), the subsequent bringing of a wrongful death action in behalf of the decedent's spouse and next of kin when the suit is based on the same negligent acts of that defendant.[4] We hold that it does not.

Section 1 of the Act reads:

"Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to [a] felony." 740 ILCS 180/1 (West 1992).[5]

Defendants assert that the "if death had not ensued" language of section 1 has been interpreted to create a condition precedent to

---

[4]See Restatement (Second) at Judgments § 46 (1982), discussing the majority and minority views on this issue and citing the authorities on both sides.

[5]Section 2 of the Act further provides:

"Every such action shall be brought by and in the names of the personal representatives of such deceased person, and, except as otherwise hereinafter provided, the amount recovered in every such action shall be for the exclusive benefit of the surviving spouse and next of kin of such deceased person and in every such action the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death, to the surviving spouse and next of kin of such deceased person.

\* \* \*

Every such action shall be commenced within 2 years after the death of such person \*\*\*." 740 ILCS 180/2 (West 1993).

bringing a wrongful death action, *i.e.*, that the action may be brought only if the decedent has not recovered, during his lifetime, for personal injury arising from the same conduct alleged to have caused his death. Defendants rely on *Wyness v. Armstrong World Industries, Inc.* (1989), 131 Ill. 2d 403, 411, 546 N.E.2d 568, 572, *Biddy v. Blue Bird Air Service* (1940), 374 Ill. 506, 514, 30 N.E.2d 14, 18, *Little v. Blue Goose Motor Coach Co.* (1931), 346 Ill. 266, 271, 178 N.E. 496, 498, *Mooney v. City of Chicago* (1909), 239 Ill. 414, 423, 88 N.E.194, 196, and *Kessinger v. Grefco, Inc.* (1993), 251 Ill. App. 3d 980, 987, 623 N.E.2d 946, 950, *appeal denied* (1994), 154 Ill. 2d 561, 631 N.E.2d 709.

Since the above-mentioned cases were decided, however, this court has twice answered the question we confront in this case in the negative. *Dettman-Brunsfeld v. Szanto* (1994), 267 Ill. App. 3d 1050, 642 N.E.2d 809; *Varelis v. Northwestern Memorial Hospital* (1994), 266 Ill. App. 3d 578, 640 N.E.2d 17, *appeal allowed* (1994), 158 Ill. 2d 584.

In *Varelis*, plaintiffs Theodora, a widow, and James Varelis, the administrator of the decedent's estate, filed a wrongful death action against the defendant after Theodora and the decedent (her late husband), during his lifetime, had recovered damages resulting from the same medical malpractice which the plaintiffs alleged caused his death.[6] (*Varelis*, 266 Ill. App. 3d at 580, 640 N.E.2d at 18.) Reversing the trial court's dismissal of the action, the appellate court rejected the defendant's contention, similar to that of defendants here, that the language of section 1 of the Act, as well as Illinois case law interpreting that section, barred the suit. The court explained that the argument advanced by the defendant failed to distinguish between the separate and distinct damages recoverable under a wrongful death action and those awarded in a survival action, stating:

> "A personal injury action is \*\*\* appropriately equated with a survival action. A survival action is brought after the death of an injured person by a representative of his estate in order to adjudicate those statutory and/or common law actions which had already accrued to the *decedent* prior to his death. [Citation.] In other words, a survival action allows for recovery of damages for injury sustained by the *decedent* up to the time of death. [Citation.] In contrast, a wrongful death action allows the decedent's

---

Mr. Cruz died on April 23, 1993, and on May 10, 1993, plaintiff filed her wrongful death claim.

[6]The jury awarded her husband $2,248,434 as damages for personal injury, and Theodora $573,500 as damages for loss of consortium. *Varelis*, 266 Ill. App. 3d at 580, 640 N.E.2d at 18.

*next of kin* to recover damages for their loss based on the wrongful actions of another which were committed against the decedent. [Citation.] Thus, a wrongful death action's damages do not accrue until after the death of the injured person and addresses the injury suffered by the next of kin due to the loss of the decedent, as opposed to the damages in a survival action which accrue during the decedent's lifetime and address the injuries personally suffered by the decedent prior to [his] death. [Citation.] Hence, the precipitating 'injury' for plaintiffs in a wrongful death action, unlike in a personal injury action, is death." (Emphasis in original.) *Varelis*, 266 Ill. App. 3d at 581-82, 640 N.E.2d at 19.

Similarly, in *Dettman-Brunsfeld*, the decedent, in the suit she brought to a conclusion before she died, was awarded $1,250,000[7] after the jury found that the defendant's medical treatment of her was negligent. Following the decedent's death, the administrator of her estate filed a wrongful death claim against the defendant seeking pecuniary damages in behalf of the decedent's mother and two sisters, one of whom was the administrator, for loss of society damages alleged to have been caused by the defendant's same negligent treatment. (*Dettman-Brunsfeld*, 267 Ill. App. 3d at 1051-52, 642 N.E.2d at 810.) The trial court granted the defendant's section 2—619 motion to dismiss the action, stating that " 'the language of [section 1 of the Act] is so clear that it really doesn't leave much room for doubt.' " (*Dettman-Brunsfeld*, 267 Ill. App. 3d at 1052, 642 N.E.2d at 810.) Relying heavily on *Varelis*, the appellate court disagreed and reversed the lower court's dismissal. *Dettman-Brunsfeld*, 267 Ill. App. 3d at 1053, 642 N.E.2d at 811.

We agree particularly with Justice Egan's specially concurring opinion in *Dettman-Brunsfeld*:

"[T]he statement of *Mooney* that there is only one cause of action no longer represents the view of the Illinois Supreme Court. In support of its holding that there was only one cause of action, the *Mooney* court cited *Holton v. Daly* (1882), 106 Ill. 131. But *Holton* was expressly overruled by the supreme court in *Murphy v. Martin Oil Co.* (1974), 56 Ill. 2d 423, 431, 308 N.E.2d 583. In *Murphy*, the supreme court held that the heirs of a decedent could maintain a survival action *and* a wrongful death action." (Emphasis in original.) *Dettman-Brunsfeld*, 267 Ill. App. 3d at 1057, 642 N.E.2d at 813-14 (Egan, P.J., specially concurring).

---

[7]Because she was found to be comparatively negligent, her damage award was reduced by 40% to $750,000. *Dettman-Brunsfeld*, 267 Ill. App. 3d at 1051, 642 N.E.2d at 810.

We note that in *Wyness,* the court was deciding an issue involving the two-year filing provision of the Act, *i.e.,* section 2, not section 1, of the Act; thus, it is not directly on point here. (*Wyness,* 131 Ill. 2d at 406, 546 N.E.2d at 569.) Moreover, in reaching its decision in *Wyness,* the supreme court, unmistakably cognizant of its holding in *Mooney,* clearly distinguished between the type of damages recoverable in a survival action and those that can be awarded in a wrongful death action, a distinction which, because the court virtually, if not conclusively, equated survival damages with personal injury damages, supports our conclusion here. (*Wyness,* 131 Ill. 2d at 410-11, 546 N.E.2d at 571.) Consequently, the conclusion is ineluctable, for "[t]he precipitating 'injury' for the plaintiffs in a wrongful death action, unlike the injury in a personal injury action, is the death; that the death must also be the result of a wrongfully caused injury suffered by the deceased at the hands of another does not alter the analysis." *Wyness,* 131 Ill. 2d at 414-15, 546 N.E.2d at 573.

■ Therefore, since a survival action and a wrongful death action are not mutually exclusive, both may not only be simultaneously maintained against a defendant, but recovery under one is not an absolute bar to recovery under the other. (See *Murphy v. Martin Oil Co.* (1974), 56 Ill. 2d 423, 431, 308 N.E.2d 583, 586; *Ellig v. Delnor Community Hospital* (1992), 237 Ill. App. 3d 396, 401, 603 N.E.2d 1203, 1206-07; Illinois Pattern Jury Instructions, Civil, No. 31.00 (3d ed. 1993) (hereinafter IPI Civil 3d No. 31.00).) The force of reason dictates, therefore, that since a personal injury action is "appropriately equated with a survival action" (*Dettman-Brunsfeld,* 267 Ill. App. 3d at 1054, 642 N.E.2d at 812, citing *Varelis,* 266 Ill. App. 3d at 581, 640 N.E.2d at 19), a personal injury action cannot, accordingly, be mutually exclusive of a wrongful death action. Such reasoning becomes all the more forceful when one considers that the predominant, if not the sole, purpose of the Act is to compensate the surviving spouse and next of kin for the pecuniary injuries *they* sustain because of the decedent's death. *In re Estate of Finley* (1992), 151 Ill. 2d 95, 101, 601 N.E.2d 699, 701; see also 740 ILCS 180/2 (West 1992).

Defendants fear that the same damages comprehended in the settlement of Cruz I may be required to be paid out again in the wrongful death action, thus resulting in a "double recovery." They overlook, however, that a decedent's spouse and next of kin are in no way legally entitled to share in the decedent's personal injury award and that, therefore, the potential for "double recovery"[8] exists only when the prospective beneficiary of an award in a wrongful death

_____

[8]Defendants seem to suggest that an order of the probate court entered

case has previously recovered damages he or she personally suffered at the hands of the defendant.[9]

We note that this issue was squarely addressed in *Varelis*, where the defendant argued that it would be "fundamentally unfair" to allow the plaintiffs to maintain a wrongful death action because it had already satisfied the decedent's personal injury award, which included damages based on loss of consortium and loss of services. (*Varelis*, 266 Ill. App. 3d at 584, 640 N.E.2d at 21.) *Varelis* observed that such a concern could be adequately addressed by the defendant's availing itself of the affirmative defense of collateral estoppel, which would bar plaintiff's being awarded damages already litigated in the personal injury action.[10] (*Varelis*, 266 Ill. App. 3d at 584, 640 N.E.2d at 21; see also *Dettman-Brunsfeld*, 267 Ill. App. 3d at 1055, 642 N.E.2d at 812.) We agree.

■ Whether the decedent's prior action resulted in a settlement or a judgment, the more equitable approach to avoid overlapping

---

in an estate for a person certified as being in a "vegetable state," providing for a monthly income to his spouse and children, payable from the proceeds of a settlement of the disabled person's personal injury action, as was done in this case, is support for their argument that they would be subject to being required to duplicate their payment of damages in the instant wrongful death action. Significantly, defendants cite no authority that would sustain their position, reason enough to reject a totally meritless argument. 134 Ill. 2d R. 341(e)(7); *Sohaey v. Van Cura* (1992), 240 Ill. App. 3d 266, 273, 607 N.E.2d 253, 275; *Chicago Title & Trust Co. v. Weiss* (1992), 238 Ill. App. 3d 921, 927, 605 N.E.2d 1092, 1097; *Sementa v. Tylman* (1992), 230 Ill. App. 3d 701, 706, 595 N.E.2d 688, 692.

[9]The potential for the greatest overlap of damages exists between a decedent's recovery for loss of future wages and a wrongful death plaintiff's subsequent claim for support where the support derives wholly or in part from such wages. See *Sea-Land Services, Inc. v. Gaudet* (1974), 414 U.S. 573, 603 n.11, 39 L. Ed. 2d 9, 31 n.11, 94 S. Ct. 806, 824 n.11 (Powell, J., dissenting, joined by Stewart, C.J., and Rehnquist, J.).

[10]In most of the States which hold that the wrongful death statute creates a cause of action in favor of the beneficiaries that is independent of the decedent's claim for his injuries, the defense of collateral estoppel precludes relitigating the defendant's liability (or absence thereof). (See Restatement (Second) Judgments § 46, Comment c, at 19 (1982).) "In any event, double recovery of damages is not permitted. In some jurisdictions this is done by defining the measures of recovery in the respective actions in mutually exclusive terms. In others, where the measures of damage overlap, the beneficiaries are precluded from seeking items of damage recoverable by the decedent in his action." Restatement (Second) of Judgments § 46, Comment c, at 19 (1982).

recovery is to submit to the determination of the trial court the issue of exactly what damages were recovered in such prior action and by whom.[11] See *Gaudet v. Sea-Land Services, Inc.* (5th Cir. 1972), 463 F.2d 1331, 1333 n.1, *aff'd* (1974), 414 U.S. 573, 39 L. Ed. 2d 9, 94 S. Ct. 806 (but the Supreme Court apparently rejected this approach and instead advanced a theory of "trusteeship," which has been justly criticized, see Restatement (Second) of Judgments § 46, Reporter's Notes, at 22 (1982)).[12]

By submitting this issue to the determination of the trial court, a balance is achieved between the legitimate concern of double recovery, and the widely recognized and accepted belief that a decedent's spouse and next of kin suffer separate, distinct, and recoverable damages[13] due to the death of their loved one. Such a balance is vastly more appealing, and just, than yielding to defendants'

---

[11]Such a determination requires close attention to the measurement of damages, and is currently required when both a survival action and a wrongful death action are simultaneously maintained against a defendant. (See IPI Civil 3d No. 31.00.) Of course, the task is made easier when the judgment in the prior case is itemized; indeed, section 2—1109 (735 ILCS 5/2—1109 (West 1992)) requires such itemization in jury cases.

[12]Addressing this issue of "double recovery," the Restatement (Second) of Judgments states:

"A more practical [approach] is to require differentiation among the items of damage in the [decedent's] own action and, to the extent that does not clarify what is left for recovery by the beneficiaries, to limit the latter to items of damage not assertable in the personal injury action." Restatement (Second) of Judgments § 46, Reporter's Notes, at 22 (1982).

[13]"[T]he trend in *** more recent decisions under the [Act] has been to expand the scope of pecuniary injury to encompass nonmonetary losses" (*Bullard v. Barnes* (1984), 102 Ill. 2d 505, 514, 468 N.E.2d 1228, 1232), *i.e.*, loss of society, which IPI Civil 3d No. 31.11 defines as "the mutual benefits that each family member receives from the other's continued existence, including love, affection, care, attention, companionship, comfort, guidance, and protection." For example, in determining damages, a jury (in addition to funeral expenses and loss of support) may consider evidence of the decedent's: (1) felicity, care, attention, and guidance to family members (*Allendorf v. Elgin, Joliet & Eastern Ry. Co.* (1956), 8 Ill. 2d 164, 179, 133 N.E.2d 288, 295); (2) personal services rendered around the home (*Allendorf*, 8 Ill. 2d at 179, 133 N.E. 2d at 295 (father's loss of services recoverable); *Dodson v. Richter* (1962), 34 Ill. App. 2d 22, 28, 180 N.E.2d 505, 508 (housewife's loss of services recoverable)); and (3) marital services, companionship, happiness and sexual intercourse (*Malfeo v. Larson* (1990), 208 Ill. App. 3d 418, 425, 567 N.E.2d 364, 369).

unwarranted fear of double recovery by responding with a "blanket approach" to bar recovery. Equity demands that the trial court be allowed to discern between wrongfully caused injuries which have been compensated, and those which have yet to be redressed.

Therefore, we hold that plaintiff's wrongful death cause of action was not foreclosed simply because her husband, prior to his death, settled his personal injury action against defendants.

Next, unlike the plaintiffs in *Varelis* and *Dettman-Brunsfeld*, here, coupled with the settlement reached in Cruz I, plaintiff executed a release in her individual capacity as well as in her capacity as her husband's legal guardian. Consequently, we must address whether that release foreclosed the bringing of the instant wrongful death action.

Although any recovery under the Act is for the exclusive benefit of the surviving spouse and next of kin (*Forthenberry v. Franciscan Sisters Health Care Corp.* (1987), 156 Ill. App. 3d 634, 637, 509 N.E.2d 166, 168; 740 ILCS 180/2 (West 1992)), the decedent's personal representative possesses the *sole* right of action and the right to control the litigation. (*Johnson v. Libertyville* (1986), 150 Ill. App. 3d 971, 973, 502 N.E.2d 474, 476; 740 ILCS 180/2 (West 1992).) Furthermore, the law of contracts governs releases, the applicable principles of which are plain and simple: the parties' intent must be ascertained according to the words of the agreement and the circumstances surrounding its execution; a release will not be construed to release claims not within the contemplation or legal authority of the parties; where a release is clear and explicit, the court will enforce it as written; and whether a release is clear and explicit is a matter of law. *International Insurance Co.*, 242 Ill. App. 3d at 622-23, 609 N.E.2d at 848.

Accordingly, this court must examine the release at issue, the pertinent language of which reads:

> "Know all men by these premises that plaintiffs, Concetta Francesca Cruz, Individually and as Guardian of the Estate of James Cruz, a disabled person *** hereby release, acquit, discharge and covenant on behalf of James Cruz, a disabled person, themselves and their heirs, legal representatives, and assigns not to further prosecute or again sue [defendants] *** for any injuries allegedly developed in the future by the Cruz', [sic] not to prosecute same for any past, present, or future damages, lost wages or other expenses incurred by the Cruz' [sic] as a result of the alleged negligence [in Cruz I]."

■ As the above language plainly indicates, plaintiff entered into the release as an "Individual[ ] and as Guardian of the Estate of James Cruz," and in signing it, she was not, nor could she have been, acting as James Cruz' personal representative; and she was not, nor could she have been, acting on behalf of any of his next of kin.[14] Therefore, while the release may bar whatever recovery may have been based on the damages suffered by plaintiff as an individual,[15] it does not, nor could it, bar recovery based on damages suffered by the decedent's next of kin[16] as a result of Mr. Cruz's death. As we have noted above, the circuit court is the proper forum to sort out and bar those damages that could result in a double recovery.

For all of the aforementioned reasons, we reverse the judgment of the trial court and remand this cause for further proceedings consistent with the views expressed herein.

Reversed and remanded.

HARTMAN and McCORMICK, JJ., concur.

---

[14]For the purposes of the Act, the phrase "next of kin" refers to those blood relatives of the decedent in existence at the time of the decedent's death that would take his property if he died intestate. *In re Estate of Finley* (1992), 151 Ill. 2d 95, 101, 601 N.E.2d 699, 701.

[15]These usually include pain and suffering, medical expenses, property damage, disability, and loss of earnings. See IPI Civil 3d Nos. 30.04, 31.10, Comment.

[16]These are referred to in footnote 14.