BERTHA MILLER *et al.*, Derivatively on Behalf of Commonwealth Edison Company, Plaintiffs-Appellants, v. BIDE L. THOMAS *et al.*, Defendants-Appellees.

First District (5th Division)    No. 1—94—0131

Opinion filed September 22, 1995.

Much, Shelist, Freed, Denenberg & Ament, P.C., of Chicago (Michael J. Freed, Edith F. Canter, and William H. London, of counsel), and Chimicles, Jacobsen & Tikellis, of Haverford, Pennsylvania (Michael Gottsch, of counsel), for appellants.

Kevin M. Forde, Ltd. (Kevin M. Forde, of counsel), Pope, Cahill & Devine (William R. Quinlan, of counsel), and Jenner & Block (Nicholas D. Chabraja, David C. Bohan, and Robert L. Denby, of counsel), all of Chicago, for appellees.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

The plaintiffs, Bertha Miller and Fred Steinlauf, filed a shareholder derivative suit on behalf of Commonwealth Edison Company (Edison) against the defendants—present and former directors of Edison since 1975—alleging breaches of duty in their management of the construction of nuclear power plants. The complaint also alleged that the current directors (board) breached their fiduciary duties by failing to bring any action against the defendants. Two weeks before filing the complaint, the plaintiffs made a demand on the board to bring suit against the defendants. After the board investigated the charges, the board refused the demand and sought to dismiss the complaint, arguing that the board controlled the derivative suit after addressing the plaintiffs' demand. The trial court granted the motion, from which the plaintiffs appeal.

We affirm.

## BACKGROUND

On November 8, 1991, plaintiffs' counsel wrote a letter to the board on behalf of Mr. Steinlauf. The letter demanded that the board file suit against the directors and officers responsible for the mismanagement which led to a disallowance of plant construction

costs from Edison's rate base. The letter also stated, "Mr. Steinlauf realizes there is a need to conduct an investigation before filing a lawsuit, but the Board of Directors should already know much of this information." Edison responded to Mr. Steinlauf's letter on December 18, 1991, and stated that the Illinois Supreme Court had just remanded the issue of the rate base back to the Illinois Commerce Commission for reconsideration. Edison also disputed Mr. Steinlauf's charges and sent him materials for him to review. Edison's letter concluded, "Commission action will probably take some months. *** After you have had an opportunity to review these materials, the Board would appreciate hearing from you as to whether you still believe you have a basis for the charges underlying your claim and, if so, what that basis might be."

On September 15, 1992, plaintiffs' counsel, now representing both plaintiffs, sent a letter to the board demanding suit against Edison's current and former directors. This letter stated:

"Since Mr. Dellsey [Edison's general counsel] wrote to us, the Illinois Supreme Court has ruled that substantial costs incurred in the construction of Byron 1 were unreasonable and must be excluded from Commonwealth Edison's rate base. *** Therefore, we reiterate our demand that the current Board bring an action against those responsible for incurring these unreasonable costs. The Board has now had ample time to investigate this matter and file suit, if such was the intent of the Board. Unless we hear from you by September 22, 1992 that a suit has been filed or that Commonwealth Edison intends to file suit promptly, Ms. Miller and the other shareholders we represent shall feel free to commence a derivative action."

Mr. Dellsey, responded by letter on September 17, 1992, stating:

"Your letter *** was directed to me today. I will bring it to the attention of the Directors at the next scheduled meeting on October 16. I am sure you will receive a reply promptly after that meeting. While I recognize that this is after the September 22 date mentioned in your letter, October 16 is the first practical opportunity for the Board to consider your letter, and I cannot see any possible prejudice to your client accruing between September 22 and October 16."

On September 24, 1992, the plaintiffs wrote to Edison's president, Bide Thomas, stating:

"On September 22, 1992, we wrote to Mr. Dellsey asking if there was any reason to believe that the Board may in fact act on our demands when it meets and initiate suit. Mr Dellsey called us today and indicated he can make no such assurances.

Given the lack of action and response to our demands the first

time we sent them to the board, that no new events have transpired since the April Supreme Court decisions, which afforded the Board more than adequate time to act if they were so inclined, we are disinclined to wait an entire month to have the Board once again summarily refuse our demands. *** We need your response no later than Monday, September 28, 1992 by 12:00 p.m."

Mr. Thomas wrote back on September 28, 1992, assuring the plaintiffs that the board would not "summarily refuse" any stockholder demand and requesting the plaintiffs to wait until the October board meeting.

The plaintiffs filed their complaint against the defendants on October 1, 1992. Count I of the complaint alleged breaches of fiduciary duty by the defendants in their failure to properly manage the construction of nuclear power plants and weigh their necessity. Count II alleged breaches of duty by the defendants through their waste of corporate assets. Count III alleged breaches of fiduciary duty by the current board members in their failure to bring any action against the defendants for the violations alleged in counts I and II. Edison was also named as a defendant in all the counts for the purpose of recovering attorney fees.

The demand allegations of the complaint included exhibits and summaries of the letters between the plaintiffs and the board. The plaintiffs then concluded their demand allegations by stating:

"Further demand by Mrs. Miller or Mr. Steinlauf on Comed's Board of Directors would be futile. The claims alleged herein arise from a long and continuous pattern of mismanagement, breaches of fiduciary duty and waste of corporate assets by the very directors and officers who would consider the demand. All of the current members of Comed's Board of Directors are defendants in this action and actively participated in the misconduct alleged herein, including the current President and Chairman of Comed and three former Comed officers. By virtue of defendants' participation in the wrongful acts alleged, there is inherent conflict of interest which would make it impossible for these Directors to make a disinterested business judgment concerning the bringing of this action against themselves."

On November 23, 1992, the defendants filed a joint motion to dismiss or, in the alternative, to stay the proceedings to allow the board to adequately investigate the plaintiffs' claims. The defendants argued for dismissal by alleging that the plaintiffs' letters were not specific enough to make a valid demand on the board. In asking for the stay, the defendants presented minutes from the Edison board meeting of October 16, 1992, in which the board resolved to conduct

an inquiry as to whether the complaint's allegations disclosed a legal cause of action which Edison should pursue. The board also resolved at the meeting to retain separate counsel for conducting the investigation.

At a hearing on November 25, 1992, the trial court granted a stay of 60 days. The plaintiffs asked for limited discovery at the hearing, but before the court could rule, the defendants voluntarily offered three transfer cartons of audits to the plaintiffs. The plaintiffs agreed that would be satisfactory until the next hearing. On February 5, 1993, the court granted another stay after the defendants reported that they were nearing completion of their investigation. At that hearing, plaintiffs' counsel indicated that he was satisfied with the discovery that the defendants had voluntarily presented.

The board wrote to the plaintiffs on April 19, 1993, that their demand had been refused. The resolution of the board explained:

"WHEREAS: The board has now completed its review of the facts and has determined that (i) the allegations of Mr. Steinlauf and Ms. Miller are without merit; (ii) no present or former officer or director of the company breached a legal duty to Edison in connection with the Company's construction of Byron 1 and 2 and Braidwood 1 and 2; and (iii) consequently, it is not in Edison's best interests to pursue the litigation initiated by Mr. Steinlauf or Ms. Miller, or to permit that litigation to proceed on behalf of the Company ***."

Accordingly, the board resolved to refuse the plaintiffs' demand and to have their complaint dismissed with prejudice.

On April 20, 1993, the defendants filed a joint motion to dismiss under sections 2—619(a)(2) and 2—619(a)(9) of the Code of Civil Procedure. (735 ILCS 5/2—619(a)(2), (a)(9) (West 1992).) Because of the board's decision to terminate the litigation, the motion alleged that the plaintiffs lacked the "legal capacity to sue" under section 2—619(a)(2) and were also "barred by other affirmative matter avoiding the legal effect of or defeating the claim" under section 2—619(a)(9). (735 ILCS 5/2—619(a)(2), (a)(9) (West 1992).) The defendants supported the motion with an affidavit from board member Jean Allard, who described the board's investigation process and its conclusion that it was in Edison's best interests to refuse the demand and not proceed with the litigation. In their motion, the defendants argued that by refusing the plaintiffs' demand to bring suit, the board was entitled to control the derivative litigation and dismiss the complaint. The defendants further argued that the board's decision to terminate the litigation was protected under the business judgment rule and could not be challenged by the plaintiffs

as long as the decision was made in good faith, upon adequate information, and with due care.

Also on April 20, 1993, the trial court issued the following order as to discovery: "[T]he stay order entered by the court shall remain in effect during these proceedings, except as agreed to by counsel or ordered by the court." On July 9, 1993, the plaintiffs filed a motion to lift the stay to permit limited discovery. The plaintiffs requested discovery to review materials which the board had relied on in making its decision to refuse demand, as described in Ms. Allard's affidavit. On July 12, 1993, the defendants filed a memorandum in opposition to the plaintiffs' motion to lift stay to permit discovery. At some time thereafter, the plaintiffs withdrew their motion, and no ruling was ever made by the trial court.

The plaintiffs filed their response to defendants' motion to dismiss on November 17, 1993. The plaintiffs argued that (1) they were excused from making a demand on the board because such a demand would have been futile; (2) the court should examine whether demand was excused because of the defendants' previous allegations that the plaintiffs' demand was inadequate; (3) the plaintiffs' demands were improperly refused; and (4) the defendants' decision to terminate the litigation was improper because, *inter alia*, the plaintiffs had no opportunity to take discovery. The plaintiffs' response did not include a counteraffidavit to refute the facts asserted by the defendants' affidavit. The defendants filed their reply memorandum on November 29, 1993, arguing that demand was not excused as futile and that their affidavit demonstrated that the plaintiffs' demands had been carefully considered and properly rejected.

On December 7, 1993, the trial court heard argument and then granted the motion to dismiss under sections 2—619(a)(2) and (a)(9), stating at the hearing:

"THE COURT: The defendants have raised an affirmative defense that defeats the plaintiffs' claim. The business judgment rule protects the defendants' decision to refuse the plaintiffs' demand to institute litigation. And I cite *Powell v. Western Illinois Electric Corp.*, 180 Ill. App. 3d 581. The plaintiffs failed to assert that this decision was made in bad faith, that the decision was based on inadequate information, or that the decision was made without due care. The plaintiffs do not have standing to sue."

The plaintiffs filed their appeal on January 3, 1994, seeking to reverse the court's order of December 7, 1993, granting the defendants' motion to dismiss. In this appeal, the plaintiffs argue (1) the court should have used its own business judgment in deciding whether the

litigation should proceed; (2) the board improperly refused the plaintiffs' demands; (3) the trial court erred in denying discovery for the plaintiffs; and (4) the plaintiffs were excused from making a demand on the board because such a demand would have been futile.

OPINION

■■ The trial court dismissed the complaint under sections 2—619(a)(2) and (a)(9). A motion to dismiss under section 2—619 admits all facts well-pleaded in the plaintiffs' complaint, and the complaint should be dismissed only if there exists no set of facts which could entitle the plaintiff to recover. (*Jackson v. Shell Oil Co.* (1995), 272 Ill. App. 3d 542, 546, 650 N.E.2d 652; *Cruz v. Illinois Masonic Medical Center* (1995), 271 Ill. App. 3d 383, 384, 648 N.E.2d 934.) The parties dispute the correct standard of review. Generally, we apply a *de novo* standard of review to a motion to dismiss because the motion does not require the trial court to weigh facts or determine credibility. (See *Federal Insurance Co. v. St. Paul Fire & Marine Insurance Co.* (1995), 271 Ill. App. 3d 1117, 1121, 649 N.E.2d 460; *Cruz*, 271 Ill. App. 3d at 384-85.) However, when a motion to dismiss is inherently procedural, such as a section 2—619(a)(3) motion seeking dismissal because another action is pending between the same parties for the same cause, the motion requires the trial court to weigh several factors to determine if it is appropriate for an action to proceed. (See *Katherine M. v. Ryder* (1993), 254 Ill. App. 3d 479, 487, 627 N.E.2d 42; *Kellerman v. MCI Telecommunications Corp.* (1986), 112 Ill. 2d 428, 447, 493 N.E.2d 1045.) Due to this weighing of evidence, *Katherine M.* and *Kellerman* considered their section 2—619 motions to dismiss under an abuse of discretion standard. *Katherine M.*, 254 Ill. App. 3d at 487; *Kellerman*, 112 Ill. 2d at 447.

■ In the instant matter, the plaintiffs argue that the trial court merely interpreted the pleadings, while the defendants contend the court made a procedural judgment to which we should grant deference. We would agree with the defendants if the trial court had weighed the propriety of the defendants' refusal to initiate litigation, as then the court would have been conducting a factual inquiry into who should properly control the derivative suit. (See *Powell v. Western Illinois Electric Cooperative* (1989), 180 Ill. App. 3d 581, 591, 536 N.E.2d 231 (after holding hearing on good faith and independence of the board, trial court's decision on control of derivative action was not against manifest weight of evidence).) However, in this case, the trial court did not examine the refusal but instead held that the pleadings "failed to assert" that the defendants' refusal was improper. Thus, as the court made its judgment strictly on the plead-

ings without making any discretionary analysis or weighing of evidence, we will review its decision *de novo*.

## I

■ The plaintiffs first contend that the trial court should have exercised its own business judgment and rejected the board's decision to terminate the litigation. We disagree. The United States Supreme Court, interpreting Delaware law, stated, "Once a demand has been made, the decision to block or to terminate the litigation rests solely on the business judgment of the directors." (*Kamen v. Kemper Financial Services, Inc.* (1991), 500 U.S. 90, 103, 114 L. Ed. 2d 152, 168, 111 S. Ct. 1711, 1720.) A case under Illinois law, *Powell*, reached the same conclusion. The *Powell* court stated:

> "Illinois courts recognize the strong preference to the decisions of corporate boards ***. It would seem incongruous to recognize this important principle and then deny the corporate authorities the right to control a corporate cause of action based on the artful pleadings of the derivative complaint. We believe that, due to this presumption, a corporation should be able to be realigned and take over responsibility for its own cause of action, subject to a hearing on the good faith and independence of the board in reaching this determination." *Powell*, 180 Ill. App. 3d at 586-87.

The plaintiffs cite cases holding that a court may use its business judgment when demand on the board is excused as futile, arguing that there is "no logical distinction" between a situation where demand was wrongfully refused and where demand was excused. *Powell* also addressed this issue:

> "The first [situation] is where a demand to sue is not made on the corporation because it is deemed futile. ***
>
> The second circumstance involves those cases where a demand to sue a party has been made on the board and they have refused to do so. In that situation, since the refusal to sue was presumably made by application of the board's business judgment, the shareholder has the burden at the hearing on the motion to prove some wrongdoing on the behalf of the board in reaching that determination." (*Powell*, 180 Ill. App. 3d at 587.)

Other cases have also reached the conclusion that demand refused and demand excused situations require different standards. (See *Levine v. Prudential Bache Properties, Inc.* (N.D. Ill. 1994), 855 F. Supp. 924, 941 (if complaint states demand was made, it must plead that refusal to sue was not a valid exercise of business judgment); *Lewis v. Hilton* (N.D. Ill. 1986), 648 F. Supp. 725, 727 (board's decision to refuse demand accorded great deference under the business judgment rule).) Even the plaintiffs admit that an independent review of the

board's decision under the court's own business judgment "has not generally been applied to cases where a demand was made." We hold that the trial court properly declined to analyze the board's decision under the court's own business judgment.

## II

■ The plaintiffs next argue that the board's refusal was improper and not a valid defense because of severe deficiencies in the board's investigation of the plaintiffs' demand allegations. The business judgment rule shields directors who have been diligent and careful in performing their duties from liability for honest errors or mistakes in judgment. (*Stamp v. Touche Ross & Co.* (1993), 263 Ill. App. 3d 1010, 1015, 636 N.E.2d 616.) The requirements necessary for protection under the business judgment rule include due care, adequate information, and good faith in making the business decision. (*Stamp*, 263 Ill. App. 3d at 1016.) If those conditions were met, the business judgment rule would fully protect the board's decision that the plaintiffs' demand for litigation was contrary to the corporation's best interest. (*Powell*, 180 Ill. App. 3d at 585.) The plaintiffs argue that the board's investigation of the plaintiffs' demands was improper because it lacked due care, adequate information, and good faith. The plaintiffs also argue that the refusal was "patently wrongful" because the board "failed to address the plaintiffs' demands at all until forced to do so by this litigation."

■ However, the propriety of the board's refusal of the demands is immaterial and not before this court. The trial court stated that it dismissed the complaint because "[t]he plaintiffs *failed to assert* that this decision was made in bad faith, *** was based on inadequate information, or *** was made without due care." (Emphasis added.) A plaintiff fixes the issues in controversy and the theories upon which recovery is sought by the allegations in his complaint. (*Pagano v. Occidental Chemical Corp.* (1994), 257 Ill. App. 3d 905, 911, 629 N.E.2d 569.) "It is a fundamental rule, with no exceptions, that a party must recover, if at all, on and according to the case [she] has made for [herself] by [her] pleadings." (*Newton v. Aitken* (1994), 260 Ill. App. 3d 717, 718, 633 N.E.2d 213 (plaintiff waived issues not presented in complaint).) In a case of an alleged breach of fiduciary duty, this court recently stated, "In the absence of factual allegations to the contrary in the complaint, we must presume that defendants acted in good faith and with due care, and as a result the business judgment rule precludes their liability." (*Stamp*, 263 Ill. App. 3d at 1018 (complaint properly dismissed).) Likewise in the instant case, the plaintiffs made no allegations in their complaint that the board's refusal of the

demand violated the business judgment rule or was in any way improper, and thus the board's unchallenged refusal bars the complaint. *Levine*, 855 F. Supp. at 941 (complaint dismissed when plaintiffs failed to plead that refusal to sue was not a valid exercise of business judgment); *Lewis*, 648 F. Supp. at 728 (complaint dismissed because plaintiffs failed to adequately plead that refusal was not the product of a valid business judgment).

The plaintiffs contend that they did not have to assert in their complaint that the refusal was improper, as they cite *Kedzie & 103rd Currency Exchange, Inc. v. Hodge* (1993), 156 Ill. 2d 112, 619 N.E.2d 732, for the statement that "a section 2—619(a)(9) motion to dismiss admits the legal sufficiency of the plaintiffs' cause of action." (*Kedzie*, 156 Ill. 2d at 115.) However, *Kedzie* held that when a defendant satisfies its initial burden of going forward with a defense under section 2—619(a)(9), the burden shifts to the plaintiff to establish that the defense is unfounded. (*Kedzie*, 156 Ill. 2d at 116.) In this case, an affidavit supported the defense, and the evidentiary facts of the affidavit are deemed admitted under section 2—619 if a counteraffidavit has not refuted them. (*Kedzie*, 156 Ill. 2d at 116.) When a defense does bar a complaint on its face, the plaintiff waives any exception to the defense which she does not assert by amending the complaint. In a section 2—619 case, the Illinois Supreme Court stated, "Since [plaintiff] failed to raise the 'special duty' exception in his complaint and did not amend his complaint to include this exception, it is not properly before this court." (*Eagan v. Chicago Transit Authority* (1994), 158 Ill. 2d 527, 534-35, 634 N.E.2d 1093 (case properly dismissed under section 2—619).) In a section 2—619 case where the plaintiff argued an exception to the defense of sovereign immunity, this court held, "Plaintiffs' complaint contains no allegation that [defendant's] actions are in violation of 'Illinois Privity Law.' In the absence of such an allegation, therefore, their complaint cannot be saved now by arguing such a violation on review." (*President Lincoln Hotel Venture v. Bank One, Springfield* (1994), 271 Ill. App. 3d 1048, 1055, 649 N.E.2d 432.) Likewise in this case, the plaintiffs cannot save their complaint by arguing on review an exception to the defense—that the refusal violated the business judgment rule—which they did not assert by amending their complaint.

## III

■ The plaintiffs contend that the trial court erred in denying discovery which was necessary for the plaintiffs to respond to the motion to dismiss. Supreme Court Rule 191(b) (134 Ill. 2d R. 191(b)) specifically addresses this issue in proceedings under a section 2—619

motion. Rule 191(b) allows a party to file an affidavit stating that material facts are known only to parties whose affidavits the affiant is unable to procure by reason of hostility or otherwise. (134 Ill. 2d R. 191(b).) Because the plaintiffs did not use Rule 191(b) to address their discovery need, they cannot ask for a reversal on the basis that they required additional discovery to oppose the motion. *Intercontinental Parts, Inc. v. Caterpillar, Inc.* (1994), 260 Ill. App. 3d 1085, 1091, 631 N.E.2d 1258.

In addition, after the motion to dismiss was filed, the trial court's stay order specifically left open the possibility that the court could order discovery. The plaintiffs filed a motion to lift the stay to permit limited discovery, but they withdrew the motion before the court could rule on it. A party who has filed a motion seeking certain relief from the court is obligated to obtain a ruling on that motion. (*Intercontinental*, 260 Ill. App. 3d at 1090.) Issues not presented to the trial court are deemed waived on review. (*Eagan*, 158 Ill. 2d at 534; *Intercontinental*, 260 Ill. App. 3d at 1090-91 (plaintiff waived discovery issue when it failed to move for additional discovery).) Therefore, the plaintiffs have also waived this issue.

Even if we were to consider this issue, we find that the trial court did not commit any error. *Lewis* directly addressed this issue, stating:

"Ordinarily, there is a presumption that the demand refusal was the product of a valid business judgment. [Citation.] It is the plaintiff-shareholder's burden to overcome that presumption, *and if he or she can plead such facts that would raise a reasonable doubt about the presumption's validity, discovery would be permitted*. Because that is not the case here, we deny Lewis' motion to take discovery." (Emphasis added.) (*Lewis*, 648 F. Supp. at 727 n.1.)

Likewise in the instant case, the plaintiff pleaded no allegations that the board improperly refused the demand, and thus the court was correct in denying discovery. (See also *Levine v. Smith* (Del. 1991), 591 A.2d 194, 210 (after demand is refused, plaintiffs are not entitled to discovery without first satisfying pleading requirements).) The cases relied upon by the plaintiffs are not demand refused situations, but summary judgment cases in which the plaintiffs needed discovery to counter factual allegations. In this matter, the trial court did not rely on the propriety of the board's refusal, and thus the plaintiffs did not need to counter any factual allegations.

## IV

■ Lastly, the plaintiffs contend that they were excused from

making a demand on the board because such a demand would have been futile. Although the plaintiffs claim that they did not waive demand futility by making a demand, this contention was rejected by the United States Supreme Court in *Kamen*, which stated, "Under the law of Delaware and the States that follow its lead, a shareholder who makes demand may not later assert that demand was in fact excused as futile." (*Kamen*, 500 U.S. at 103, 114 L. Ed. 2d at 168, 111 S. Ct. at 1720.) We see no reason to deviate from Delaware's standard, as this rule makes a great deal of sense from an efficiency standpoint. It would be a waste of time and resources to allow a shareholder to make a demand and have the claim investigated by the company, only to allow the shareholder to declare the investigation meaningless when unhappy with the results. The plaintiffs rely on *Brown v. Tenney* (1988), 155 Ill. App. 3d 605, 508 N.E.2d 347, *aff'd* (1988), 125 Ill. 2d 348, 532 N.E.2d 230, but that case merely "noted" that its plaintiff would have been successful whether he had made a demand or had alleged futility. (*Brown*, 155 Ill. App. 3d at 610.) *Brown* did not address the issue of whether a demand precluded a demand futility claim, and the case cannot support the plaintiffs' contention. See *Brown*, 125 Ill. 2d at 354 ("appellate court found *** that the requirement that a shareholder make a demand upon the corporation to correct any alleged wrongs [had] been fulfilled").

The plaintiffs' other contention is that demand was excused as futile due to unreasonable delay by the defendants in responding to the plaintiffs' demands. We do not find unreasonable the board's response to the initial demand in 1991. The board sent materials to plaintiffs' counsel and asked counsel to reply to the board's response if he still wanted to make a demand, describing in the reply the specific misconduct he was alleging. Plaintiffs' counsel made no reply to the letter, and the plaintiffs felt it necessary to make another demand after the Illinois Supreme Court rulings of 1992. Nor was it unreasonable for the board not to respond to the plaintiffs' 1992 demand within the plaintiffs' two-week timetable. The plaintiffs have not presented what the board should have done other than address the issue at its next meeting, and we do not believe that this insignificant delay could have justified any belief by the plaintiffs that demand was futile. The plaintiffs rely on *Mills v. Esmark, Inc.* (N.D. Ill. 1981), 91 F.R.D. 70, but this case contradicts their contention—the *Mills* court specifically allowed the corporation more than three months to respond to its plaintiff's demand. *Mills*, 91 F.R.D. at 73 n.4.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

GORDON and T. O'BRIEN, JJ., concur.