Georgia WATKINS, Appellant,

v.

ATLANTIC LIFE INSURANCE CO. and
Southwestern Life Insurance
Co., Appellees.

No. 3424.

District of Columbia Court of Appeals.

Argued Feb. 17, 1964.

Decided March 20, 1964.

Glenn R. Moody, Jr., Washington, D. C.,
for appellant.

Frederick R. Wilson, Washington, D. C.,
for appellees.

Before HOOD, Chief Judge, and QUINN
and MYERS, Associate Judges.

MYERS, Associate Judge.

This is an appeal by a beneficiary of a
policy of insurance, issued on the life of
one Cleveland Artis by the Atlantic Life
Insurance Co. and assumed by the South-
western Life Insurance Co., from a judg-
ment denying her the benefits allegedly due
her as a result of the insured's death. The
defenses raised by the appellee insurance
companies were (1) that appellant had, upon
their payment to her of $140.94, executed
a "release" of all claims and demands under
the policy; (2) that the death of the insured
was the result of fighting, which was within
the exclusionary clause of the policy limit-
ing liability of the company to an amount
equal to the premiums paid on the policy;
and (3) that the policy was voidable because
the insured was suffering from unsound
health at the time of the application and
failed to reveal that fact.

The case was tried by the court without a jury. Appellant admitted the receipt of $140.94 as shown by a release signed by her on February 5, 1963, discharging appellees from all further claims and demands under the policy. The amount of this payment equaled the total premiums paid under the policy, for which appellees' representative conceded they were liable. No other consideration was given for the release.

The insurance policy was not introduced but appellant concedes the accuracy of the following section of the policy:

"10. LIMITATIONS OF INSURANCE. (A) If within two years from date hereof the Insured dies at the hand of the Beneficiary, or dies as the result of fighting, or from injuries intentionally inflicted upon the Insured, the liability of the Company is limited to an amount equal to the premiums paid on this Policy, as death from any such cause is a risk not assumed by the Company during the first two Policy years."

The trial court, in a written memorandum, found that the insured " * * * came to his death as a result of injuries intentionally inflicted upon him by another person," that "the liability of the defendants in such event is limited to an amount equal to the premiums paid on said policy," and that plaintiff [appellant] "executed a release to defendants on February 5, 1963, releasing and discharging them of and from all manner of claims and demands whatsoever." It ruled that the sum of $140.94 was valuable consideration for the release, which was valid and binding upon the parties, and entered a finding for the insurance companies.

Thereafter appellant filed a motion to amend the findings on the ground that the insurance companies had not alleged as a defense that the insured came to his death as the result of injuries intentionally inflicted upon him. The court re-opened the case and set it for further hearing. At that time appellees asserted for the first time that the insured's death resulted from intentionally-inflicted injuries upon him. An objection by appellant and a demand for jury trial were overruled and the trial continued to permit appellant to prove that the insured's death was not caused by injuries intentionally inflicted upon him. Upon re-hearing, the trial court ruled that appellant had failed to sustain her burden and a finding for the insurance companies was thereupon entered.

In the Agreed Statement of Proceedings, as submitted by counsel for both parties and approved on behalf of the trial judge, the facts surrounding the insured's death were summarized as follows:

"On January 15, 1963, the insured, while sitting in his own living room, watching television, was set upon by a person or group of persons who unlawfully entered * * * dragged him into the hallway, and gave him a beating from which he did not recover. The insured did have a weak heart, of which fact the killers were not aware. Death was not the natural and probable consequence of the beating administered by the killers, who were subsequently charged with murder and convicted of manslaughter."

■ We are unable to reconcile the original finding in the trial court's memorandum, rendered at the conclusion of the trial, that the insured came to his death as a result of injuries intentionally inflicted upon him by another person, with the statement in the Agreed Statement of Proceedings that the insured's death was not the natural and probable consequence of the beating. These findings are in direct conflict with each other and we are not permitted to guess which one the trial court found in fact to govern the case. Therefore, we can only reverse and remand for a new trial that will clear away the discrepancy.

■ For guidance of the court at a new trial, the burden of proving by a preponderance of the evidence any affirmative defenses asserted by the insurance

companies to appellant's claim must be carried by them. Gittleson v. Robinson, D.C.Mun.App., 61 A.2d 635. Although appellees initially raised as a defense that Artis met his death as a result of fighting, not until rehearing did they claim he succumbed from injuries intentionally inflicted upon him by another person. If both affirmative defenses are to be relied upon at retrial, they must be set forth in amended pleadings and adequately proved at trial. Pryme Construction Corp. v. Nickolson; D. C.App., 193 A.2d 739; Hurwitz v. Barr, D. C.App., 193 A.2d 360. See also GS Rule 8(c).

Finally, we rule that the trial court erred in holding there was valuable consideration to support a valid release by the beneficiary when she was paid the sum of $140.94, which is the exact amount of the total premiums paid under the policy and which was returnable in the event the death of the insured came within the exclusionary clause and was not covered by the policy.

Reversed and remanded with instructions to grant a new trial.